Cassandre M.A. Ferguson
PSC 2 Box 8353
APO, AE 09012
267-752-3202
Cassandre.jeudin@gmail.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CASSANDRE M.A. FERGUSON | Case No.: 1:23-cv-00161-JMS-WRP |
| Plaintiff, | FIRST AMENDED COMPLAINT; JURY DEMAND; SUMMONS |
| vs. | |
| USABLE LIFE, | VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, THE AMERICANS WITH DISABILITY ACT OF 1990, HAWAII'S DISCRIMINATION LAW, HAW. REV. STAT. § 378-62, HAW. REV. STAT.  §378-2 |
| Defendant, | |

## FIRST AMENDED COMPLAINT

Plaintiff, CASSANDRE M.A. FERGUSON proceeding as a Pro Se litigant for a First Amended Complaint against Defendant USABLE LIFE under FRCP 15(a)(1)(B), alleges and avers as follows:

## PARTIES

1.      Plaintiff Cassandre Ferguson is an Active-duty military spouse currently residing overseas in Germany accompanying her Active-Duty U.S. Army husband and family under military orders.

1

2.    Plaintiff Cassandre Ferguson is a woman of Haitian descent and classifies as an African American citizen of the United States.

3.    Plaintiff was hired by Defendant on October 21, 2019.

4.    Plaintiff was constructively terminated on January 6, 2022.

5.    Defendant Usable Life is alleged to have over 500 employees and 6 locations including its Honolulu office.

6.    Defendants headquarter is located at:

Physical Address:          17500 Chenal Parkway Suite 500
City, State & Zip Code:   Little Rock, AR 72223

Mailing Address:          P.O. Box 1650
City, State & Zip Code:   Little Rock, AR 72203-1650
Fax:                             501-235-8403

## NATURE OF THIS ACTION

7.    This lawsuit alleging unlawful discrimination, retaliation, and constructive termination under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, sex, disability), Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117, Haw. Rev. Stat. § 378-62 and Haw. Rev. Stat. §378-2.

8.  The discrimination includes failure to provide a reasonable work accommodation for the plaintiff's disability during and after her pregnancy, unequal terms and conditions of employment, and retaliation.

9.     Plaintiff was retaliated against on several occasion, and the latest

retaliation was on or about December 8, 2021, for engaging in a protective activity.

10.     Due to health issues, working in hostile work environment, coupled

with the discrimination endured by the plaintiff, she was forced to resign from her

position on January 6, 2022.

## JURISDICTION AND VENUE

11.     The court has subject matter jurisdiction base on federal subject

matter jurisdiction, pursuant to 28 U.S.C. § 1331 as the claim arises out of the Civil

Rights Act of 1964, Title VII. Plaintiff has also brought additional claims under the

laws of the State of Hawaii. This court has supplement jurisdiction over the

remaining claims, pursuant to 28 U.S.C. 1367.

12.     Further, diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 (a).

13.     Venue in this judicial district is proper under 28 U.S.C. 1391(b) in

that this is the judicial district in which the acts and omissions hereinafter

complained of occurred.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     Plaintiffs timely filed her Pre-Complaint Questionnaire with the

Hawaii Civil Rights Commission (HCRC) on May 25, 2022.  Once Plaintiff was

contacted by HCRC, a Charge of Discrimination was provided and filed under case

number 22226 and the Equal Employment Opportunity Commission (EEOC)

under case number 37B-2022-00214 on June 13, 2022, alleging discrimination

based on race, sex, disability, and retaliation.

15.    On September 8, 2022, a Notice of Dismissal and Right to Sue was

issued by the HCRC, a copy of which is attached hereto as Exhibit "A". On

September 21, 2022, a Notice of Right to Sue letter was issued by the EEOC, a

copy of which is attached hereto as Exhibit "B"

16.    On September 20, 2022, the Plaintiff submitted a final appeal to the

HCRC office seeking reconsideration of their dismissal and the Right to Sue letter

dated September 8, 2022. However, on November 4, 2022, the Plaintiff received a

response indicating that their request for reconsideration had been reviewed, but

the decision made on September 8, 2022, would remain unaltered.

17.    Plaintiff filed suit in Cassandre M.A. Ferguson vs. Usable Life, Case

No. 1CCV-22-0001539, In the Circuit Court of the First Circuit, Honolulu

Division, State of Hawaii on December 6, 2022, before it was removed and

brought before this court under Case no. 1:23-cv-00161-JMS-WRP on April 6,

2023.

<u>STATEMENT OF FACTS</u>

18.    Plaintiff was hired on October 21, 2019. She was employed.

as a Claims Examiner I, earning $24.09 hourly.

19.    At all times, Plaintiff was employed by Defendant at its Honolulu,

Hawaii office.

20.    Plaintiff was the only African American in the Honolulu, Hawaii office.

21.    During her employment with Usable Life, Plaintiff's job duty was responsible for reviewing, adjudicating and making decisions on Temporary Disability Insurance (TDI) claims, reviewing Hawaii laws that governs TDI, and engaging in daily conversation with claimants, employers, and physician office.

22.    Plaintiff's job was of Sedentary work which involved sitting most of the time with walking or standing at brief periods of time.

23.    As a Claims Examiner, Plaintiff initially reported to TDI Supervisor Elizabeth Franklin who was located in-house at the Honolulu office and TDI & Short-Term Disability (STD) Manager Lex Bramwell who was located at Defendants headquarter in Arkansas.

24.    However, Elizabeth Franklin resigned sometime after December 16, 2019.

25.    Plaintiff did not have a supervisor from Mid-December 2019 until February 2020.

26.    During this absence of a supervisor, Plaintiff relied on her teammates Hiroko Ogura, a Senior Claims Examiner, Malaika Smith, a Claims Examiner and Theresa Neitzke-Okamoto another Claims Examiner who were all well

experienced in the field of TDI claims. Plaintiff also reached out to the Department of Labor for assistance since they were the governing entity on TDI laws for benefits.

27.    Sometime near the end of December 2019 after the resignation of Plaintiff's first supervisor Elizabeth, Plaintiff's manager Lex Bramwell began to "train" claimant remotely from his location in Little Rock, Arkansas.

28.    Plaintiff later finds out that she was incorrectly trained by her manager due to a few negative feedbacks she received on the audits of her claims. When Plaintiff questioned her manager, she was informed that he did not know much of TDI and was training Plaintiff base on his knowledge of STD practices.

29.    Plaintiff was informed by her colleagues Malaika Smith and Hiroko Ogura that they suggested to Lex Bramwell that they would offer to thoroughly train Plaintiff since they knew the laws and practices of TDI and had many experiences with the contacts at the Department of Labor, but their request was turned down.

30.    Instead, Plaintiff was assigned to a mentor name Allison Kitchen located in the Arkansas office to provide claimant with training and feedbacks. However, Plaintiff still was provided some incorrect training and practices that did not translate well to how TDI claims should be adjudicated.

31.    Defendant hired a new TDI supervisor named Drexel Smith on or

about February 2020 to work in the Honolulu office.

32.    Plaintiff became pregnant in the early months after her employment and developed a Pelvic and Back pain health issue during her pregnancy to which her doctors placed her on restrictions on February 16, 2020.

33.    The plaintiff experienced significant pain from her pelvic issue of such magnitude that it impeded her ability to ambulate from the parking garage utilized by certain employees to the office building situated approximately three blocks distant.

34.    Plaintiff further would experience clicking or grinding in her pelvic area which became a major discomfort sitting too long at her workstation and even when she needed to walk a few steps to the printer that was by her Supervisors office to print out claim correspondence.

35.    Plaintiff provided her doctors restriction to the Defendant on February 26, 2020 and was informed on February 28, 2020, by HR Director Erin Scoggins of the approval for accommodation.

36.    During this time the Honolulu office received stand-up desk risers that were provided and setup on top of all the employees desk except for the employees in the TDI department.

37.    There were three departments in the Honolulu office: HMSA, Sales and TDI.

38.    After the setup of all the stand-up desk risers in the Honolulu office there was one remaining desk riser that was stored.

39.    Brenda Scott later follows up with Plaintiff to inform her that she would receive a stand-up desk riser at her workstation to accommodate for her disability, however the Defendant failed to setup the desk riser and did not provide it to Plaintiff throughout her remaining of her pregnancy.

40.    Plaintiff assumed that the desk riser that she was promised was possibly the remaining one that was stored in the office.

41.    The plaintiffs assert that during a TDI team meeting attended by the manager, Lex Bramwell, and all colleagues from the TDI team, questions were raised regarding the provision of stand-up desk risers. It is alleged that Mr. Bramwell stated that the TDI team would not receive such risers, as it would be unfair to do so when his STD team in the Arkansas office did not have access to them. Additionally, it is further claimed that Mr. Bramwell indicated that if he were to provide stand-up desk risers to the TDI team, he would need to provide them to the STD team as well.

42.     Plaintiff further allege that the Manager and Supervisor disregarded claimant's disability and the approval from HR to provide her a Stand-up Desk Riser because of this statement.

43.    Plaintiff complained to HR regarding the lack of accommodation

sometime in early March 2020 and was informed by Brenda Scott via phone that the stand-up desk should have already been provided and setup at Plaintiff workstation and that she would follow up with Plaintiff's supervisor Drexel to rectify her concerns.

44.    Plaintiff did not receive a follow up after the above conversation with Brenda Scott nor did her supervisor ever notify her of when she would receive the desk riser to accommodate her disability.

45.    When the pandemic started Plaintiff was order by Defendant to work from home starting Mid- March 2020. The stand-up desk riser was still not setup for the Plaintiff nor was the equipment given to her to take home along with her other work equipment's.

46.    Defendant also did not provide at home accommodation for the Plaintiff's disability when she was informed to work from home due to the pandemic.

47.    On March 6, 2020, Plaintiff was awarded a bonus incentive by Defendant as a result of her contributions to Defendant's achievement of its 2019 goals, following a period of approximately four months of employment with Defendant.

48.    During the nine months of the Plaintiffs pregnancy leading to her last

day of work prior to the commencing of her approved Maternity Leave date of August 3, 2020, Plaintiff still did not receive reasonable accommodation for her disability.

49.    Plaintiff further allege that as a direct result of Defendant not providing her with the Stand-up Desk Riser for her disability, she was forced to work through the pain of sitting prolong hours that exacerbated her disability.

50.    When Plaintiff's supervisor Drexel (White Male) was trained and acclimated to the TDI team, he began to oversee, review and authorize payments on all of Plaintiff's work since Plaintiff was not authorized to pay on claims freely.

51.    Under Drexel's supervision Plaintiff still did not receive the proper and correct training from Defendant to fill in the gaps in her knowledge of TDI processes and the company's procedures that she still required to perform her duties correctly.

52.    The plaintiff hereby asserts that she repeatedly implored her supervisor and manager to establish a TDI Claims Training Manual, particularly when she perceived inconsistencies between the feedback she received, and the practices and procedures employed by her colleagues and the Department of Labor in the adjudication of TDI claims. The Plaintiff was informed that the Defendant did not adhere to the standards of her previous employer, a competitor of the Defendant, who provided training classes and manuals for their examiners.

53.    However, when a new Claims Examiner Jim Little was hire on or about June or July 2020 of a different race and sex (White Male), Drexel provided him the appropriate training and guides for Jim to succeed.

54.    During the starting period of Jim Little's employment, all employees were adhering to the stay-at-home order because of the COVID-19 pandemic. Consequently, Jim received his training and evaluations while working from home.

55.    The same White male colleague received his release authorization access to adjudicate claims freely after only eight months with the firm on or about February 2021.

56.    The authorization release is needed to be promoted to Claim Examiner II.

57.    Thus, Plaintiff had no equal opportunity to achieve that goal due to the unequal terms and condition of her employment.

58.    The Defendant informed the Plaintiff in the early start of her employment of the conditions necessary to obtain Release Authorization, including a demonstration of knowledge of the TDI product, proficiency in the usage of relevant systems such as Salesforce, CSW, and ICE, and the ability to adjudicate claims with good judgement. However, despite the Plaintiff's diligent efforts, praises and bonus incentive received for good work she still did not receive her release authorization and was beginning to question the motives of the Defendant.

59.    It was not until she reported discrimination to Defendant that she discovered the more elaborate conditions required to obtain Release Authorization. Which by then Plaintiff had almost reached two years of employment with Defendant.

60.    Before commencing her maternity leave on August 3, 2020, the Plaintiff engaged in a one-on-one meeting with her supervisor to discuss her work performance and the timeline for obtaining her Release Authorization. Drexel made assurances to the Plaintiff that she would receive her Release Authorization shortly after her return to work following the birth of her child.

61.    Upon resuming work with the Defendant on or about October 22, 2020, the Plaintiff, who had previously been on maternity leave, disclosed to the Defendant that she had ongoing and new disabilities that required accommodation. Despite having knowledge of these disabilities, the Defendant unlawfully failed to provide any form of reasonable accommodation for her ongoing disability.

62.    The Plaintiff was subsequently advised by Brenda Scott, an HR representative, to work on her kitchen counter, which was not a reasonable accommodation, as it did not provide the necessary setup for the Plaintiff to effectively perform her duties and be available to her clients.

63.    During the times that claimant would attend PT she would lose out on normal work hours which caused her to have a backlog of claims she already had

assigned to her and not having the ability to work promptly on new claims that were still being assigned daily.

64.     Therefore, her supervisor approved her request to work afterhours to be able to catch up on missed work.

65.     On 11/13/20 Defendant indicated through corporate email to all employees that they were on their 9th month of having employees work remotely from home.

66.     Defendant never indicated a full office reboot for employees to return to normal in-office work nor required its employees to stop working from home.

67.     During the period that Plaintiff returned to work on or about October 22, 2020 through about April 2021 which is when Plaintiff completed Physical Therapy, Defendant still did not provide claimant with a reasonable accommodation for her new disability.

68.     The stress and anguish Plaintiff felt for the lack of support caused her to no longer produce breastmilk for her infant child. Plaintiff newborn suffered from lack of breastmilk and because her daughter was exclusively breastfed, she did not take to formula. Therefore, Plaintiff's newborn daughter became ill.

69.     During that period that the Plaintiff daughter was ill, and Plaintiff took leave to take care of her, she discovered that her Supervisor Drexel Smith made an insincere joke in an email dated 2/18/2021 to the entire TDI team and management

that "…She's been [referring to Plaintiff] managing a house with a sick child. I'd rather be working than deal with that, haha".

70.     During the month of February 2021, the Plaintiff discovered that her colleague, Jim Little, had obtained the Release to Authorize without any hindrance. Upon inquiry, Jim Little disclosed that he was unaware of the said release until he continuously attempted to submit payment through the ICE system, and only upon a successful attempt did he become aware of his Release Authorization.

71.     During the relevant period, the Plaintiff was subjected to email harassment from her assigned auditor, Jessica Golen, who engaged in provocative behavior. Despite the Plaintiff's efforts to address this issue by reporting it to Drexel and Lex and requesting a replacement auditor, her request was denied.

72.     Consequently, the Plaintiff was compelled to persist in enduring unsolicited engagement with Jessica Golen. This, in turn, led to the Plaintiff's failure to duly scrutinize a substantial portion of her audit evaluations. Typically, when the Plaintiff assessed her audits and encountered unfavorable comments, she would provide justifications for the actions taken on her claims, prompting the auditor to adjust her audit scoring to a greater degree.

73.     Due to Plaintiff avoiding further conflict she no longer rebuttal any deductions made through Jessica's audit reviews that went against Plaintiff's performance score.

14

74.    On March 5, 2021, Plaintiff received another bonus incentive for her contribution to the achievements of the Defendant meeting its 2020 goals.

75.    On March 17, 2021, the Plaintiff had a Zoom meeting with Drexel to ask about obtaining Release Authorization guidelines. Drexel was unaware of any such documents and explained that Jim Little received authorization because he had received additional training and feedback since he was able to come into the office, whereas the Plaintiff was not.

76.    On April 14th, 2021, Drexel conveyed an electronic mail to Jessica Golen, pertaining to a claim of point deduction against the Plaintiff's audit. Drexel alleged that the TDI team displayed a discrepancy in determining the incur date of a claim. However, Drexel maintained that the Plaintiff's adjudication of the claim was not erroneous, as the Department of Labor had previously established the method for determining a claimants incur date if the claimant work on the date of injury.

77.    Plaintiff engaged in a protective class activity by reporting issues of discrimination on August 2, 2021, to her HR Director Erin Scoggins and HR Personnel Dina Rail to investigate. She was informed on August 11, 2021, that they had a meeting with her supervisor and manager and for her to have a meeting with them as well.

78.    On, August 11, 2021, Drexel retaliated against Plaintiff by revoking.

her previously approved ability to work afterhours to catch up on missed work.

79.    On or about August 16, 2021, the Plaintiff received the guidelines information regarding other factors necessary to successfully obtain Release Authorization, which involved more than what was originally informed to Plaintiff when she was hired.

80.    The Plaintiff had a meeting with her Supervisor and Manager who acknowledged their failure to train and provide the Plaintiff with correct feedbacks and information, which resulted in a lapse in her training.

81.    The Plaintiff was informed that she did not qualify for a Performance Improvement Plan since she demonstrated an understanding of her job duties, as well as the workings of TDI and how to adjudicate her claims.

82.    The Plaintiff was also made aware of the system issues faced by the department, and that with holidays approaching and colleagues taking leave for an extended period, there may be more backlog in claims, but was encouraged to clean up her claims and catch up before year end, on or about December 16th.

83.    Plaintiff request to do Overtime to catch up on her work which she was approved, and Plaintiff caught up to all her files before December 16, 2021.

84.    The Plaintiff asserts that the Defendant engaged in their final retaliatory actions on December 28th, (the day prior to the Plaintiff's scheduled

leave of absence for mental health reasons) placing Plaintiff on a Performance Improvement Plan.

85.    Plaintiff worked in a hostile work environment where she felt that she had no voice and was scrutinized on a daily and after she experience a few panic attacks and reached several burnouts throughout her employment period she was forced to resign.

86.    As a direct and proximate result of the Defendants' unlawful discriminatory conduct in violation of the Hawaii and Federal Law Against Discrimination and Retaliation, Plaintiff has suffered and continues to suffer financial and economic damages as well as severe mental anguish and emotional distress, including but not limited to, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

STATEMENT OF CLAIMS
COUNT I: SEX & RACE DISCRIMINATION

87.    Plaintiff repeats and realleges all prior allegations from paragraph 1 through 86 as if fully set forth herein.

88.    Plaintiff was subjected to unequal terms and conditions based on her race and/or her sex. The unequal terms and conditions included, but were not limited to, being denied proper training in that, while her area of responsibility was Temporary Disability Insurance ("TDI") claims under Hawaii law, the training

provided to her was for Short Term Disability Insurance (STD), which is not applicable to Hawaii.

89.    However, her other colleagues of different races were provided the proper training on TDI.

90.    Plaintiff assigned auditor would take away points from her audit scores due to the ways that Plaintiff processed claims which later was revealed that Plaintiff was correct in the way she processed the claim.

91.    When she attempted to train herself by contacting the State of Hawaii, Department of Labor and Industrial Relations and using information from fellow colleagues that were experienced in TDI she was chastised for doing so.

92.    Plaintiff direct Supervisor Drexel reviewed all her claims and at times would give her incorrect feedbacks which later would be revealed by Auditor that an Overpayment or Underpayment was made in the payment system that Drexel approved on Plaintiff's claim.

93.    Between September 24 and September 28, 2021, Drexel levied baseless allegations against the plaintiff, claiming that she had modified her notes regarding a specific claim that incorrectly printed the claimant's last name on their benefits check. The issue escalated to the point where the plaintiff contacted the system administrator to investigate the incorrect last name. She was informed that Drexel's setup of the claim was already inaccurate when he assigned it to the

plaintiff, and that she did not alter her notes. Despite this, Drexel failed to

apologize for his unfounded accusations regarding the plaintiff's work ethic.

94.   Plaintiff alleges that based on these incorrect feedbacks that was

affecting her work, she felt that Defendant was setting her up to fail so that they

can either reduce her pay increase, place her on a Performance Improvement Plan

or worst fire her.

95.   Defendant and its employee's treatment of Plaintiff was stated herein,

constitutes extreme and outrageous behavior. Defendant and its employee's

treatment actions as described herein were done with malice and with the intent to

cause, or the knowledge that it would cause severe emotional and mental distress

to plaintiff.

96.   Plaintiff has suffered, as a direct and proximate result of the aforesaid

conducts, damages by way of loss of earnings, possible promotion and benefits due

to her.

97.   As a result of the wrongful, unlawful, and illegal acts and/or

omissions of Defendants as alleged herein, Plaintiff suffered special and general

damages in an amount to be proven at trial.

STATEMENT OF CLAIMS<br>COUNT II: SEX & DISABILITY DISCRIMINATION

98.   Plaintiff repeats and realleges all prior allegations from paragraph 1

through 97 as if fully set forth herein.

99.    The American with Disability Act of 1990, as amended, prohibits discrimination due to disability, and to provide a reasonable accommodation to a person with disability.

100.    Plaintiff alleges that the Defendant discriminated against her under ADA 1990 for failure to comply to her doctors' restrictions of no prolong sitting and having the capability to work while standing to relieve pelvic pain during and after her pregnancy.

101.    Defendant failure to provide Plaintiff with a Stand-Up Desk that was promised and approved by Defendant is an act and/or failure to act by Defendant and its employees in direct violation of the American with Disability Act of 1990, as amended.

102.    Plaintiff has suffered, as a direct and proximate result of the aforesaid conducts, damages by way of loss of earnings and earning capacity, possible promotion and benefits due to her.

103.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered mental anguish, outrage, severe anxiety about her future and her ability to support herself, painful embarrassment and humiliation among her friends and co-workers, disruption of her personal life for which she is entitled to an award of general and special damages in an amount proven at trial.

STATEMENT OF CLAIMS
COUNT III: VIOLATION OF HAWAII REVISED STATUTES SECTION 378-2

104.   Plaintiff realleges and incorporates by reference paragraphs 1 through 103 as if said paragraphs were fully set forth herein.

105.   The above acts by Defendant with respect to Plaintiff constituted a violation of Hawaii Statutes Section 378-2.

106.   As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendant as alleged herein, Plaintiff suffered Special and general damages in an amount to be proven at trial.

STATEMENT OF CLAIMS
COUNT IV: VIOLATION OF HAWAII REVISED STATUTES SECTION
378-62

107.   Plaintiff realleges and incorporates by reference paragraph 1 through 106 as if said paragraphs were fully set forth herein.

108.   Plaintiff engaged in reporting discrimination to her HR personnel and in turned was placed on a Performance Improvement Plan.

109.   The above acts by Defendant with respect to Plaintiff constitute a violation of the Hawaii Whistleblower's Protection Act, Hawaii Revised Statutes Section 378-62.

110.   As a result of the aforementioned wrongful, unlawful, and illegal acts and/or omissions of Defendants as alleged herein, Plaintiff suffered special and general damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgement in her favor and against Defendant in the form of relief as follows:

A.    For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful.

B.    For lost wages, penalties and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial.

C.    For compensatory damages for Plaintiff emotional pain and suffering, in an amount to be proven at trial.

D.    For punitive damages in an amount to be determined at trial.

E.    For interest on lost wages, compensation, and damages, including pre and post-judgment interest and an upward adjustment for inflation.

F.    For an order enjoining Defendants from engaging in the unlawful acts complained of herein.

G.    For any of her reasonable attorneys' fees and costs of suit if she should gain representative.

H.    For such other and further relief as this Court deems just and proper.


Dated: Landstuhl, Germany, May 4, 2023.

*/s/ Cassandre M.A. Ferguson*
CASSANDRE M.A. FERGUSON
Pro Se Plaintiff

EXHIBIT "A"

# HAWAI'I CIVIL RIGHTS COMMISSION

830 PUNCHBOWL STREET, ROOM 411 • HONOLULU, HI 96813-5095 • PHONE: (808) 586-8636 • FAX: (808) 586-8655 • TTY: (808) 586-8692

September 8, 2022          Certified Mail-**RETURN RECEIPT REQUESTED**

Cassandre M.A. Ferguson
PSC 2 Box 8353
APO, AE  09012

**Re:**   **Notice of Dismissal and Right to Sue in**
**Cassandre M.A. Ferguson vs. Usable Life**
**FEPA No. 22226; EEOC No. 37B-2022-00214**

Dear Cassandre Ferguson:

The investigator assigned to handle the discrimination complaint which you filed with the Hawaii Civil Rights Commission (HCRC) has recommended that the case be closed on the basis of no cause. The case has been reviewed by the Executive Director who concurs with this recommendation. This does not necessarily mean that the problems you alleged did not occur, but that the investigation could not confirm those allegations to the standard of proof level required by the statute for the Commission to further pursue the case.

Please be advised that this recommendation has been accepted, the processing of the case by this Commission has been closed effective September 8, 2022 and your complaint is being dismissed pursuant to Hawaii Administrative Rules (H.A.R.), Section 12-46-11. You now have the right to file a private lawsuit against Respondent in the State Circuit Court within ninety (90) days after receipt of this notice pursuant to Hawaii Revised Statutes Section 368-12 and H.A.R. Section 12-46-20, should you wish to do so. You are further advised that you should consult an attorney immediately if you wish to pursue this matter further. If you feel your case is strong, an attorney may well be willing to take your case forward because they are not limited, as this Commission is, by the requirement that the matter meet the required standard of proof level before proceeding.

Also be advised that a complainant may request reconsideration of this dismissal of the complaint only within thirty (30) days after the date of receipt of this Notice of Dismissal. (H.A.R. Section 12-46-11). The request for reconsideration must be in writing, must fully set forth the new evidence or specific reasons for disputing this dismissal and should be addressed to the Executive Director at the above address. However, please be advised that filing for reconsideration does not extend your 90-day deadline to file a private lawsuit.

Cassandre M.A. Ferguson
FEPA No. 22226
September 8, 2022
Page 2


This complaint was dual-filed with the U.S. Equal Employment Opportunity Commission. If you do not agree with this determination, you may request a substantial weight review from the U.S. EEOC.  Such request must be made within 15 days of the date of this notification and be in writing.  The request must be mailed to:  U.S. EEOC, Los Angeles District Office, 255 East Temple Street, 4th Floor, Los Angeles CA  90012.


Sincerely,


William D. Hoshijo
Executive Director

WDH:ky

c:  Brian Black, Vice President - Corporate Counsel

First Notice

Loc: **CRTLTR**

13−Sep−2022

8353 FERGUSON

7021 0350 0000 8116 8396

ID: 28104714

HAWAI'I CIVIL RIGHTS COMM

830 Punchbowl Street, Room 411
Honolulu, HI 96813-5095

09012-008453

CERTIFIED MAIL®

7021 0350 0000 8116 8396

RETURN RECEIPT
REQUESTED

Cassandre M.A. Ferguson
PSC 2 Box 8353
APO, AE 09012

HONOLULU HI 967

US POSTAGE $007.82⁰
04/08/2022

ZIP 96813
041M11274940

DENIAL

EXHIBIT "B"



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Los Angeles District Office
255 East Temple St, 4th Floor
Los Angeles, CA 90012
(213) 785-3090
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/21/2022

To:  Cassandre M. Ferguson
    c/o Charles H Brower, Esq.
    Pioneer Plaza 900 Fort Street, Suite 1210
    Honolulu, HI 96813
Charge No: 37B-2022-00214

EEOC Representative and email:   Karrie Maeda
      State, Local & Tribal Program Manager
      karrie.maeda@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Christine Park-Gonzalez
09/21/2022

Christine Park-Gonzalez
Acting District Director